1  Abbas Kazerounian, Esq. (SBN: 249203)
2  ak@kazlg.com
   Nicholas R. Barthel, Esq. (SBN: 319105)
3  nicholas@kazlg.com
4  **KAZEROUNI LAW GROUP, APC**
   245 Fischer Avenue, Unit D1
5  Costa Mesa, CA 92626
   Telephone: (800) 400-6808
6  Facsimile: (800) 520-5523
7
   [Additional Counsel On Signature Page]
8
9  *Attorneys for Plaintiff*

10

11          **UNITED STATES DISTRICT COURT**
12          **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  BRUCE BROUILLETTE, Individually and on behalf of all others similarly situated, | Case No.:  8:20-cv-02133 |
| 15 | |
| 16 | **CLASS ACTION COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF, DAMAGES AND RESTITUTION FOR VIOLATIONS OF:** |
| 17          Plaintiff, | |
| 18  v. | |
| 19  Vivid Seats LLC, | **1.  CONSUMER LEGAL REMEDIES ACT, CAL. CIVIL CODE §§ 1750, *ET SEQ.*;** |
| 20 | |
| 21          Defendant. | **2.  FALSE ADVERTISING LAW, CAL. BUS. & PROF. §§ 17500, *ET SEQ.*;** |
| 22 | |
| 23 | **3.  UNFAIR COMPETITION LAW, CAL. BUS. & PROF. §§ 17200, ET SEQ.;** |
| 24 | |
| 25 | **4.  NEGLIGENT MISREPRESENTATION; AND** |
| 26 | |
| 27 | **5.  INTENTIONAL MISREPRESENTATION** |
| 28 | **JURY TRIAL DEMANDED** |

---

CLASS ACTION COMPLAINT                                    *Brouillette v. Vivid Seats LLC*

# INTRODUCTION

1.     Plaintiff Bruce Brouillette ("Mr. Brouillette" or "Plaintiff") brings this Class Action Complaint for public injunctive relief to protect the consuming public in California from the deceptive advertising and business practices of defendant, Vivid Seats LLC ("Vivid Seats" or "Defendant") with regard to Defendant's false and misleading promotion of its tickets as having a "100% Buyer Guarantee," and to obtain recompense for California consumers who purchased one or more event tickets for events that were cancelled and for which a full refund was not provided by Defendant.

2.     Defendant falsely and misleadingly promotes its ticketing services as having a "100% Buyer Guarantee", meaning that "[i]f an event is canceled with no rescheduled date, [consumers] are naturally entitled to a full refund of the purchase price, including delivery charges." However, when Plaintiff tried to invoke this guarantee to receive refunds on events canceled due to COVID-19, Defendant refused to provide Plaintiff with a full refund.

3.     Consequently, several of Defendant's advertised claims are false and misleading.

4.     Plaintiff makes these allegations as follows upon personal knowledge as to Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

5.     Defendant's nationwide sale and advertising of deceptively misbranded products constitutes violations of: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (2) California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*; (3) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (4) negligent misrepresentation; and (5) intentional misrepresentation.

6.     This conduct caused Plaintiff and others similarly situated damages and requires restitution and injunctive relief to remedy and prevent further harm.

7.     Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of the named Defendant.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action under 28 U.S.C. §1332(d), because this is a proposed class action in which: (i) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (ii) members of the proposed Class are citizens of a State different from Defendants; and (iii) the number of Class Members is greater than 100.

9.     Defendant has sufficient minimum contacts with California and has otherwise intentionally availed itself of the markets in California through the promotion, marketing, and sale of its products and services, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) and (3) because: (i) a substantial part of the events or omissions giving rise to these claims occurred in this District; (ii) Defendant is subject to the Court's personal jurisdiction with respect to this action because Defendant conducts business in this judicial district; and (iii) plaintiff Mr. Brouillette resides within this judicial district.

## PARTIES

11.     Mr. Brouillette is a natural person residing in the City of Huntington Beach, State of California.

12.     Upon information and belief, Defendant is a corporation that is organized and exists under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois.

13.     Defendant resells tickets to consumer events, such as concerts or sporting events.   Defendant conducts extensive business through internet sales within the United States, including California.

### NATURE OF THE CASE

14.     Vivid Seats is a secondary ticket marketplace that connects ticket sellers with ticket buyers.

15.     Sellers can post tickets for sale on Vivid Seats' online platform, where buyers can view and purchase tickets. In exchange, Vivid Seats charges the buyer and seller a fee. For example, a seller is typically charged 10% of the total sale price.

16.     Buyers are charged a service fee and delivery fee or electronic transfer fee, which can be more than 25% of the total sales price for a single ticket.

17.     In order for this business model to work, Vivid Seats requires a steady influx of sellers so that there are always tickets for sale on the platform.

18.     To incentivize ticket sellers to use Defendant's platform, Defendant would quickly pay the ticket sellers, even if the event the ticket related to had not yet occurred.

19.     Until recently, Defendant's "Seller Terms and Conditions" stated that "sellers typically receive payments issued to their registered Paypal accounts not more than fourteen (14) business days after delivery to buyer, regardless of method of delivery , unless otherwise agreed to by Vivid Seats. For events that are more than 100 days from the date of the sale, Sellers receive payment approximately 90 days from the date of the event."

20.     Defendant advertises on its website that every ticket purchase comes with a 100% Buyer Guarantee, which was "designed to give you full peace-of-mind, safety, and security."

21.     Vivid Seats further claimed that "[i]f an event is canceled with no rescheduled date, you are naturally entitled to a full refund of the purchase price, including delivery charges. For events that are rescheduled, we will assist you with

CLASS ACTION COMPLAINT                                                    *Brouillette v. Vivid Seats*

any ticket reissuing concerns or help you sell your tickets if the new date is no longer desirable to you."

22.     Defendant heavily advertises the "100% Buyer Guarantee" by including it in commercials in large text and through Defendant's constant reminder on banners throughout its website that the consumer's purchase comes with a "100% Buyer Guarantee".

23.     Below are some banners that appear on Defendant's website.





100% BUYER GUARANTEE

- Valid tickets delivered in time for the event or your money back
- Secure transactions backed by full service customer care
- Full compensation for events that are canceled and not rescheduled

VIEW FULL DETAILS

24.     According to Defendant, Defendant's 100% Buyer Guarantee entices millions of consumers to choose Defendant over other similar services.[1]

25.     However, by ensuring that the sellers had cash available to continue purchasing tickets to other events, Defendant gave up the capital that was needed to provide its consumers with the "full refund" that Defendant had promised.

26.     Defendant knew, or should have known, that it did not have enough capital to provide its consumers with a full refund as it had advertised. In fact, this

---

[1] https://www.vividseats.com/vivid-seats-experience (Last accessed Oct. 26, 2020)

is exactly what happened when Covid-19 pandemic occurred.

27.     After the United States shut down in March of 2020 due to the COVID-19 pandemic, all entertainment events were canceled, with no rescheduling.

28.     At first, Defendant continued to promise consumers that "[i]f a customer purchased tickets to an event that is canceled with no rescheduled date, they are entitled to a full refund of the purchase price, including delivery charges, per Vivid Seats' 100% Buyer Guarantee. There is no need to take any action, and our award-winning customer service team will contact customers directly regarding next steps."[2]

29.     Defendant has continued to refuse to honor the 100% Buyer Guarantee, and instead has forced customers to accept only future, "Rewards Cash loyalty credit".

30.     Furthermore, Defendant has now voluntarily changed the language of the 100% Buyer Guarantee from "you will be refunded for a cancelled event" to "you will be compensated for a cancelled event."

31.     Despite promising consumers full refunds, Defendant now is attempting to unilaterally minimize its exposure by changing its website's language and by refusing to give consumers refunds.

### FACTUAL ALLEGATIONS

32.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33.     On or about March 1, 2020, Mr. Brouillette purchased two tickets to see The Rolling Stones in concert on May 8, 2020, which costs a total of $1,632.82.

34.     On or about March 17, 2020, The Rolling Stones announced that they would be canceling their 2020 tour due to the Covid-19 pandemic.

---

[2]https://web.archive.org/web/20200407050613/https://support.vividseats.com/support/solutions/articles/11000083676-information-regarding-the-coronavirus-impact (Last accessed on October 26, 2020).

35.     On or about March 18, 2020, Mr. Brouillette called Vivid Seats to get a refund. Vivid Seats stated that they were going to look into the matter. However, Vivid Seats never got back to Mr. Brouillette, nor did they give him any timetable on when the investigation would be resolved. After several calls, Vivid Seats never provided Mr. Brouillette with a refund.

36.     Still not having any luck getting a refund from Vivid Seats directly, on April 13, 2020, Mr. Brouillette attempted to dispute his charges with his credit card servicer, Discover. However, after an investigation, Discover left the charges on Mr. Brouillette's account because it determined the charges were "valid based on the merchant's documentation."

37.     To date, Mr. Brouillette has not received any kind of refund for the tickets he purchased.

38.     At the time Plaintiff purchased Defendant's tickets, Plaintiff believed and relied upon Defendant's representation that the tickets came with a 100% Buyer Guarantee that allowed the Plaintiff to get a full refund in the event of a cancellation of their event without rescheduling.

39.     Plaintiff reasonably believed that Defendant's tickets came with a 100% Buyer Guarantee.

40.     Plaintiff would like to purchase tickets using Defendant's platform again in the future but is concerned about being further mislead by Defendant.

41.     All of the tickets purchased through Defendant's website contain identical or substantially similar representations regarding the nature of the tickets.

42.     Defendant knew, or in the exercise of reasonable care, should have known that it could not provide a full refund to all its consumers, thus Defendant knew, or should have known, that its advertising materials were misleading or false.

43.     As a consequence of Defendant's unfair and deceptive advertising and manufacturing practices, Plaintiff and other consumers similarly situated purchased and overpaid to use Defendant's platform under the false impression that the tickets

*Brouillette v. Vivid Seats*

were backed by a "100% Buyer Guarantee" that would allow purchasers to get a full cash refund if there is a cancellation without a reschedule.

44.     Plaintiff and other consumers similarly situated in California purchased and overpaid to use Defendant's platform under the misrepresentations that Defendant's that the tickets were backed by a "100% Buyer Guarantee" that would allow purchasers to get a full cash refund if there is a cancellation without a reschedule.

45.     If Plaintiff had been aware that the there was no "100% Buyer Guarantee", Plaintiff would have paid less to use Defendant's marketplace or would have purchased the tickets on a different platform. In other words, Plaintiff would not have purchased tickets through Defendant but for the representations on the Defendant's website.

46.     Plaintiff and others similarly situated were exposed to and relied upon the same material misrepresentations made on Defendant's website.

47.     As a result of Defendant's false and misleading statements, Plaintiff and other similarly situated consumers purchased thousands, if not tens or hundreds of thousands, of tickets on Defendant's marketplace, and have suffered, and continue to suffer, injury in fact through the loss of money and/or property.

48.     This action seeks, among other things, public injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains as a result of the misconduct alleged herein.

### CLASS ACTION ALLEGATIONS

49.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50.     Plaintiff brings this action individually and on behalf of all others similarly situated against Defendant, pursuant to Fed. R. Civ. P. 23.

51.     Subject to additional information obtained through further investigation and/or discovery, the proposed class (the "Class") consists of:

> All persons residing in California who used Vivid Seats to purchase one or more tickets to any event which was subsequently canceled or constructively canceled at any point within four years prior to the filing of this action until the date that notice of this class action is disseminated to the Class, and to whom Defendant has not provided a full refund, including all fees.

52. Excluded from the Class is Defendant and any of its officers, directors, and employees, or anyone who purchased Defendant's Product for the purpose of resale. Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

53. The "Class Period" means four years prior to the filing of the Complaint in this action.

54. **Ascertainability**.  The members of the Class are readily ascertainable from Defendant's records and/or Defendant's agent's records of online sales.

55. **Numerosity**.  The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believe that millions of people have used Defendant's online ticket platform, and on that basis, Plaintiff alleges that the putative Class consists of hundreds, if not thousands of members within California.

56. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims are based on the same standardized marketing, advertisements and promotions. The common legal and factual questions include, but are not limited to, the following:

      a. Whether the Defendant falsely advertised that all tickets came with a guarantee that the consumer could get their money back;

b. Whether Defendant did not retain enough capital to actually give all of its consumers a refund;

c. Whether Defendant's claims and representations, as alleged herein, are untrue, misleading, and/or reasonably likely to deceive the average consumer;

d. Whether Defendant's conduct violates California Civil Code §§ 1750, *et seq.*;

e. Whether Defendant's advertising is false, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.*;

f. Whether Defendant's conduct is an unfair, fraudulent, or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

g. Whether Defendant's advertising is unfair, deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

h. Whether Defendant acted negligently or intentionally in making the misrepresentations contained on Defendant's website and other advertising mediums as explained above;

i. Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

j. Whether Plaintiff and the putative Class members are entitled to equitable relief, including but not limited to restitution and/or disgorgement of ill-gotten gains; and

k. Whether Plaintiff and the putative Class members are entitled to injunctive relief as sought herein.

57. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent.

Similar to members of the putative Class, Plaintiff purchased the tickets after exposure to the same material misrepresentations and/or omissions appearing on Defendant's website. Plaintiff also received tickets that Defendant did not have the capital to provide refunds for in the chance of a cancelation. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all absent members of the Class. Defendant has no defenses unique to Plaintiff.

58. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the putative Class. Plaintiff has retained counsel experienced in consumer protection law, including class actions, and specifically, false and deceptive advertising. Plaintiff has no adverse or antagonistic interest to those in the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and proposed Class.

59. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them. Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation of the complex legal and factual issues of such a case increases the delay and expense to all parties, including the court. By contrast, the class action device presents far

fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23.

60.     Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to, or allow its resellers to, advertise, market, promote, and sell its tickets in an unlawful and misleading manner, and members of the Class will continue to be misled, harmed, and denied their rights under California law.

61.     Further, Defendant has acted or refused to act on grounds that are generally applicable to the class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed. R. Civ. P. 23.

### FIRST CAUSE OF ACTION FOR
### VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### CAL. CIV. CODE §§ 1750, *ET SEQ.*

62.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63.     California Civil Code Section 1750, *et seq.,* entitled the Consumers Legal Remedies Act (hereinafter "CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."   The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia*, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

64.     Defendant's tickets constitute a "good" as defined pursuant to Civil Code Section 1761(a).

65.    Plaintiff and the putative Class members are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

66.    Plaintiff and each of the putative Class members' purchase of Defendant's tickets constitutes a "transaction" as defined pursuant to Civil Code Section 1761(e).

67.    Civil Code Section 1770(a)(2), (5), (7) and (9) provide that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> (2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services;
>
> (5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …;
>
> (7) [r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another; [and]
>
> (9) [a]dvertising goods or services with intent not to sell them as advertised."

68.    Defendant violated Civil Code Section 1770(a)(2), (5), (7) and (9) by marketing and representing its tickets as coming with a "100% Buyer Guarantee" that would provide consumers with a full refund in case of a cancellation without a rescheduling. However, in reality, Defendant was not retaining the capital needed to provide refunds for its consumers, and thus could not provide every consumer with a refund as it advertised.

69.    On information and belief, Defendant's violations of the CLRA, as set forth herein, were done with awareness of the fact that the conduct alleged was wrongful and was motivated solely by Defendant's self-interest, monetary gain, and increased profit. Plaintiff further alleges that Defendant committed these acts

knowing the harm that would result to Plaintiff and Defendant engaged in such unfair and deceptive conduct notwithstanding such knowledge.

70.     Plaintiff suffered an "injury in fact" because Plaintiff's money was taken by Defendant as a result of Defendant's false and misleading representations set forth on Defendant's website and other advertising mediums as explained above.

71.     As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the putative Class are entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

72.     Attached hereto as **Exhibit A** is the affidavit of Plaintiff pursuant to Cal. Civ. Code § 1780(d).

73.     Plaintiff and the putative Class are also entitled to, and seek, injunctive relief prohibiting such conduct in the future and to recover money damages.

74.     Plaintiff reserves the right to amend the Complaint to assert damages under the CLRA under Cal. Civ. Code § 1782(a).

### SECOND CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
### BUS. & PROF. CODE §§ 17500, *ET SEQ.*

75.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.     Plaintiff and Defendant are both "person[s]" as defined by California Business & Professions Code § 17506.

77.     California Business & Professions Code § 17535 authorizes a private right of action on both an individual and representative basis.

78.     Defendant advertises its platform as providing consumers with a "100% Buyer Guarantee" that ensures consumers will receive a full refund on any event that is canceled without rescheduling, when, in fact, Defendant did not maintain the capital to provide consumers with full refunds, and now refuses to provide consumers with full refunds.

79.     These misrepresentations, acts, and non-disclosures by Defendant constitute false and misleading advertising in violation of Business & Professions Code §§ 17500*, et seq.*

80.     At all times relevant, Defendant's advertising and promotion of its Products was, and is, untrue, misleading, and likely to deceive the reasonable consumer and the public. In fact, Defendant did deceive Plaintiff and the putative Class members through the above described representations.

81.     Defendant engaged in the false and/or misleading advertising and marketing its online marketplace, as alleged herein, with the intent to directly or indirectly induce consumers to purchase tickets to events using its platform, which Defendant knew, or had reason to know, did not have the properties that Defendant alleged.

82.     Because Defendant knew or should have known that the representations and/or omissions alleged herein were untrue or misleading, Defendant acted in violation of California Business & Professions Code §§ 17500, *et seq.*

83.     Had Defendant truthfully advertised that it could not provide consumer with a guaranteed refund for canceled events, Plaintiff and the putative Class members would not have purchased tickets to events through Defendant, or would have paid less to Defendant.

84.     This false and misleading advertising by Defendant presents a continuing threat to consumers, as Defendant still claims on its website that tickets come with a "100% Buyer Guarantee" including compensation for canceled events.

85.     As a direct and proximate result of the aforementioned acts and omissions by Defendant, Defendant received and continues to hold monies rightfully belonging to Plaintiff and the putative Class members, who were led to purchase tickets on Defendant's platform during the Class Period.

//

//

### THIRD CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")
### BUS. & PROF. CODE §§ 17200, *ET SEQ.*

86.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

87.     Plaintiff and Defendant are each a "person" as defined by California Business & Professions Code § 17201. California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

88.     "Unfair competition" is defined by Business and Professions Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."  The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

89.     By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

90.     An "injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009); *see also, Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 789 (2010) ("[i]f a party has standing under" the UCL, "it may seek injunctive relief").

### A. "UNLAWFUL" PRONG

91.     Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200 *et seq.,* by marketing,

manufacturing, and distributing Defendant's Product in violation of California's Consumers Legal Remedies Act, Civil Code § 1750, *et seq*. and California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.,* as alleged herein.

92.     Defendant violated the above-referenced statutes by falsely and misleadingly representing that tickets sold on Defendant's online marketplace come with a "100% Buyer Guarantee", as described in more detail above.

93.     By advertising, promoting, manufacturing, and selling its Product in violation of those California laws, Defendant engaged in a pattern of "unlawful" business practices within the meaning of California's UCL.

94.     Plaintiff seeks public injunctive relief to benefit the general public directly by bringing an end to Defendant's unlawful business practices which threaten future injury to the general public.

## B. "UNFAIR" PRONG

95.     Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant has committed acts of unfair competition as prohibited by Bus. & Prof. Code §§ 17200, *et seq*.

96.     Had Plaintiff and the putative class members been informed that Defendant's tickets did not come with a guaranteed refund for canceled events that are not rescheduled, they would not have purchased the tickets on Defendant's platform or would have paid less. In other words, Defendant earned the business of Plaintiff and the putative Class members by using deceptive advertising, which placed competitors at a disadvantage. Furthermore, Plaintiff and the putative Class members were harmed in that they paid a price premium for the Product.

## C. "FRAUDULENT" PRONG

97.     Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant engaged in acts of unfair competition, including those described above and herein, in violation of Bus. & Prof. Code §§ 17200, *et seq.,* by engaging in a pattern of "fraudulent" business practices within the

meaning of Bus. & Prof. Code §§ 17200, *et seq.,* by falsely and misleadingly advertising its online marketplace as providing consumers with a buyer guarantee, when, in fact, that is not true as described above.

98.   Plaintiff reserves the right to allege further conduct that constitutes other fraudulent business acts or practices. Such conduct is ongoing and continues to this date.

### D.   "UNFAIR, DECEPTIVE, UNTRUE OR MISLEADING ADVERTISING" PRONG

99.   Defendant's advertising is unfair, deceptive, untrue, and/or misleading within the meaning of Bus. & Prof. Code §§ 17200, *et seq.,* in that consumers are led to believe that Defendant's online marketplace provides consumers with a buyer guarantee, when, in fact, that is not true as described above.

100.   Plaintiff and other such reasonable consumers are likely to be, and were, deceived and misled by Defendant's advertising of its online marketplace.

101.   As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct described herein, Defendant received and continues to receive an unfair competitive advantage and unearned commercial benefits at the expense of its competitors and the public, who unwittingly provided money to Defendant based on Defendant's misleading representations.

102.   Plaintiff and the putative Class members suffered an injury in fact because Plaintiff's money was taken by Defendant as a result of Defendant's false representations as set forth on Defendant's website.

103.   Such acts and omissions by Defendant are unlawful and/or unfair and/or fraudulent, and constitute multiple violations of California's UCL. Plaintiff reserves the right to identify additional violations by Defendant as may be established through discovery.

104.   In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which reward is available to a prevailing plaintiff in a class action such as this.

### FOURTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

105.   Plaintiff repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.

106.   Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant represented to Plaintiff and others similarly situated that tickets purchased on Defendant's online platform would come with a "100% Buyer Guarantee" that allowed for consumers to get a full cash refund in the case that the event was canceled without rescheduling.

107.   Defendant made these representations knowing, or having reason to know, that Defendant did not have the capital to provide every consumer with a refund, nor did it have any intent to give every consumer a refund.

108.   Defendant acted with the intent to induce the public, including Plaintiff and putative Class members, to purchase tickets on Defendant's platform.

109.   Plaintiff and the putative Class members saw, believed, and relied upon Defendant's representations in making the decision to purchase on Defendant's platform.

110.   At all times relevant, Defendant knew or should have known that such representations were untrue, and Defendant had no reasonable basis for believing the representations to be true.

111.   As a proximate result of Defendant's negligent misrepresentations, during the Class Period Plaintiff and other consumers similarly situated were induced to purchase through Defendant's online platform due to the unlawful acts of Defendant, the damages of which are to be determined at trial.

### FIFTH CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION

112.   Plaintiff repeats, re-alleges, and incorporates herein by reference the above allegations as if fully stated herein.

CLASS ACTION COMPLAINT                                        *Brouillette v. Vivid Seats*

113.   Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant intentionally represented to Plaintiff and others similarly situated, through online advertising and other advertising mediums as described above, that Defendant's platform comes with a 100% Buyer Guarantee ensuring the consumer that they will get a full refund if an event is canceled without rescheduling.

114.   Defendant acted intentionally by willfully and purposefully making representations on its website and other advertising materials as described above.

115.   However, as described above, the Defendant's tickets do not come with the advertised benefits.

116.   Defendant knew or had reason to know such representations were false, because it always gave the money consumers paid for back to ticket sellers before the event occurred.

117.   Plaintiff and the putative Class members saw, believed, and relied upon Defendant's representations in making the decision to use Defendant's online marketplace to purchase tickets.

118.   As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the putative Class members were damaged in an amount to be determined at trial.

119.   Plaintiff alleges the "who, what, when, where, and how" of the alleged deception by Defendant as follows:

      i.   The "who" is Defendant;

      ii.   The "what" is the representation that Defendant provides consumer with a 100% Buyer Guarantee that ensures consumers will get a refund on their purchases;

      iii.   The "when" is the date Plaintiff purchased the tickets through Defendant's website, and the Class Period of four years prior to the filing of this Complaint;

                                            *Brouillette v. Vivid Seats*

iv.    The "where" is in Defendant's online marketing and marketing through other mediums, such as television commercials; and

v.    The "how" is the allegation that Defendant did not have or save the capital to refund its consumers as promised.

120.   By engaging in the acts described above, Defendant is guilty of malice, oppression, and fraud, and Plaintiff and the putative Class are therefore entitled to recover exemplary or punitive damages.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff respectfully request the Court grant Plaintiff and the putative Class members the following relief against Defendant:

- that this action be certified as a Class Action;

- that Plaintiff be appointed as the Class Representative;

- that Plaintiff's attorneys be appointed as Class Counsel;

- that Defendant's wrongful conduct be adjudged and decreed to violate the consumer protection statutes raised herein;

- An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and to restore to Plaintiff and members of the class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

- A temporary, preliminary and/or permanent order for public injunctive relief requiring Defendant to: (i) discontinue engaging in the unlawful conduct alleged herein, including but not limited to inclusion of false and/or misleading statement/s concerning the ticket refund policy; and (ii) undertake an immediate public information campaign to inform members of the proposed class as to Defendant's prior unlawful business practices;

CLASS ACTION COMPLAINT                                              *Brouillette v. Vivid Seats*

- Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery were necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;
- that Defendant be enjoined from continuing the wrongful conduct alleged herein and be required to comply with all applicable laws;
- Pre-judgment interests from the date of filing of this suit;
- that Plaintiff and each member of the putative Class recover their costs of suit.

### FIRST CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
### CAL. BUS. & PROF. CODE §§ 1750, *ET SEQ.*

- Injunctive relief, restitution, and punitive damages pursuant to Cal. Civ. Code § 1780(a); and
- an award of costs and attorney's fees pursuant to Cal. Civ. Code § 1780(e).

### SECOND CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*

- Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17535; and
- recovery of reasonably attorney's fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

- Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17203; and
- recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5.

CLASS ACTION COMPLAINT                                    *Brouillette v. Vivid Seats*

### FOURTH CAUSE OF ACTION FOR
### NEGLIGENT MISREPRESENTATION

- A judgment against Defendant for general and compensatory damages in an amount to be determined at trial; and

### FIFTH CAUSE OF ACTION FOR
### INTENTIONAL MISREPRESENTATION

- A judgment against Defendant for general and compensatory damages in an amount to be determined at trial;
- punitive damages pursuant to Cal. Civ. Code § 3294; and
- that Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

### TRIAL BY JURY

121.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury.


Date: November 5, 2020                    KAZEROUNI LAW GROUP, APC


                                          By:  *s/Abbas Kazerounian*
                                               Abbas Kazerounian, Esq.
                                               ak@kazlg.com
                                               *Attorneys for Plaintiff*

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN 216752)
tfriedman@attorneysforconsumers.com
324 S. Beverly Dr., #725

Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228

*Additional Attorney for Plaintiff*

# EXHIBIT A

## <u>DECLARATION OF BRUCE BROUILLETTE</u>

**I, BRUCE BROUILLETTE, declare:**

1. On or about March 1, 2020, I purchased two tickets to see The Rolling Stones from vividseats.com.

2. At the time of purchase and review of Vivid Seats' website, I was in Orange County, where I also reside.

    I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on  11/04/2020  .

By:_____

              Bruce Brouillette

Declaration Pursuant To Cal. Civ. Code §1780(d)