1  LATHAM & WATKINS LLP
   Mark S. Mester (Admitted *Pro Hac Vice*)
2    *mark.mester@lw.com*
   Robert C. Collins III (Admitted *Pro Hac Vice*)
3    *robert.collins@lw.com*
   330 North Wabash Avenue, Suite 2800
4  Chicago, Illinois 60611
   Telephone: (312) 876-7700
5  Facsimile: (312) 993-9767

6  LATHAM & WATKINS LLP
   Michael A. Hale (Bar No. 319056)
7    *michael.hale@lw.com*
   355 South Grand Avenue, Suite 100
8  Los Angeles, California 90071
   Telephone: (213) 485-1234
9  Facsimile: (213) 891-8763

10 *Attorneys for Defendant Vivid Seats LLC*

11

12            **UNITED STATES DISTRICT COURT**

13    **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

14

15 BRUCE BROUILLETTE,              CASE NO. 8:20-cv-02133-JLS-ADS
   Individually and on behalf of all
16 others similarly situated,      **DEFENDANT VIVID SEATS LLC'S**
                                   **NOTICE OF MOTION AND**
17                      Plaintiff, **MOTION TO DISMISS AND**
                                   **TO COMPEL ARBITRATION**
18      v.
                                   Hon. Josephine L. Staton
19 VIVID SEATS LLC,
                                   Date:  June 11, 2021
20                      Defendant. Time:  10:30 a.m.
                                   Courtroom 10A
21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 11, 2021 at 10:30 a.m. or as soon thereafter as the matter may be heard before the Honorable Josephine L. Staton in Courtroom 10A of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701, Defendant Vivid Seats LLC ("Vivid Seats") will and hereby does move the Court for an order dismissing the claims of Plaintiff Bruce Brouillette ("Plaintiff") under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and/or 12(b)(6) and compelling him, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., to engage on an individual, non-class basis in the final and exclusive arbitration procedures expressly set forth in the Terms of Use of Vivid Seats to which Plaintiff agreed and, alternatively, to dismiss Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Vivid Seats' motion is based on (1) this Notice of Motion and Motion, (2) Vivid Seats' Memorandum of Points and Authorities, (3) the concurrently filed Declaration of Riva Bakal, (4) the pleadings and papers on file in this action, (5) the arguments of counsel and (6) any other matter that the Court may properly consider.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 15, 2021.

Dated:  January 25, 2021               Respectfully submitted,

LATHAM & WATKINS LLP
By: /s/ *Michael A. Hale*
        Michael A. Hale

Michael A. Hale (Bar No. 319056)
*michael.hale@lw.com*
555 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

1

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1

**LATHAM & WATKINS LLP**

2

Mark S. Mester (Admitted Pro Hac Vice)
  *mark.mester@lw.com*

3

Robert C. Collins III (Admitted Pro Hac Vice)
  *robert.collins@lw.com*

4

330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611

5

Telephone: (312) 876-7700
Facsimile: (312) 993-9767

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
CHICAGO

2

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................1

II.   FACTUAL BACKGROUND...............................................................2

    A.    Plaintiff Purchased Tickets Through Vivid Seats And Agreed To The Terms Of Use.......................................................................2

    B.    The Terms Of Use Contain Arbitration And Dispute Resolution Procedures That Expressly Govern All Disputes Related To Ticket Purchases .................................................................3

    C.    Plaintiff Waived Any Right To File Class Litigation Or To Proceed In A Representative Capacity Or As A Class Member ........................................................................................4

    D.    Plaintiff Files A Class Action Complaint In Federal Court Despite The Express Agreement To Arbitrate Such Claims On An Individual Basis ................................................................5

III.  ARGUMENT.........................................................................................5

    A.    The Court Should Dismiss Plaintiff's Complaint And Compel Arbitration.............................................................................5

    B.    Plaintiff And Vivid Seats Entered Into A  Valid, Written Agreement To Arbitrate .................................................................7

    C.    This Dispute Plainly Falls Within The Scope Of The Arbitration Provision To Which Plaintiff Agreed..............................11

    D.    Plaintiff Must Arbitrate His Dispute On A Non-Class Basis ............14

    E.    The Arbitrator Should Resolve Any Remaining Disputes (If Any) Regarding Whether The Dispute Is Subject To Arbitration .................................................................................15

    F.    The Court Should Alternatively Dismiss Plaintiff's Claims For Failure To State A Claim ......................................................17

        1.    Illinois Law Applies To Each Of Plaintiff's Claims ..............18

        2.    Plaintiff's Statutory Claims All Fail ......................................20

        3.    Plaintiff's Negligent Misrepresentation Claim Also Fails ................................................................................20

        4.    Plaintiff's Intentional Misrepresentation Claim Also Fails ................................................................................22

IV.  CONCLUSION....................................................................................23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

i

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Ajzenman v. Office of Comm'r of Baseball,
2020 WL 6031899 (C.D. Cal. 2020) ..................................................6, 10

Ajzenman v. Office of Comm'r of Baseball,
2020 WL 6037140 (C.D. Cal. 2020) ..................................................6, 10

Ali v. Vehi-Ship,
2017 WL 5890876 (N.D. Ill. 2017) .......................................................17

Allen v. Shutterfly,
2020 WL 5517172 (N.D. Cal. 2020) .....................................................17

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ...............................................................................18

AT&T v. Concepcion,
563 U.S. 333 (2011) ...........................................................................6, 13

Bayer v. Comcast,
2013 WL 1849519 (N.D. Ill. 2013) .......................................................16

Bell Atlantic v. Twombly,
550 U.S. 544 (2007) ...............................................................................18

Brazil v. Dell,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................20

Brown v. Luxottica,
2010 WL 3893820 (N.D. Ill. 2010) ..................................................14, 15

Bustan v. CareVoyant,
2011 WL 13217581 (C.D. Cal. 2011) ....................................................19

C.M. v. Aetna,
2019 WL 5833700 (N.D. Ill. 2019) ..................................................22, 23

Cardonet v. IBM,
2007 WL 518909 (N.D. Cal. 2007) .......................................................20

Castorena v. Charter Commc'ns,
2018 WL 10806903 (C.D. Cal. 2018) ....................................................14

Daisley v. Blizzard Music,
2017 WL 1628399 (C.D. Cal. 2017) ........................................................7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

**Page(s)**

Davis v. Fenton,
  26 F. Supp. 3d 727 (N.D. Ill. 2014) ....................................................8

Demarco v. CC Servs.,
  2017 WL 1148752 (Ill. App. 1st Dist. 2017) ..............................20, 21

Desnick v. Am. Broadcasting,
  44 F.3d 1345 (7th Cir. 1995) ...........................................................22

Dohrmann v. Intuit,
  823 F. App'x 482 (9th Cir. 2020) .......................................................8

Eagle Star Ins. v. Highlands Ins.,
  165 F. App'x 529 (9th Cir. 2006) ..................................................6, 11

Facility Wizard Software v. Se. Tech. Servs.,
  647 F. Supp. 2d 938 (N.D. Ill. 2009) ...............................................19

Fadal Machining Ctrs. v. Compumachine,
  461 F. App'x 630 (9th Cir. 2011) .....................................................17

Ferguson v. Corinthian Colleges,
  733 F.3d 928 (9th Cir. 2013) ........................................................6, 11

Fils v. Internet Referral Servs.,
  2020 WL 77709345 (S.D. Tex. 2020) ..............................................13

First Midwest Bank v. Stewart Title Guar.,
  843 N.E.2d 327 (Ill. 2006) ...............................................................21

Flores v. Uber,
  2018 WL 5937253 (C.D. Cal. 2018) ................................................16

Foster Poultry Farms v. Alkar-Rapidpak-MP Equip.,
  868 F. Supp. 2d 983 (E.D. Cal. 2012) ........................................22, 23

Gorny v. Wayfair,
  2019 WL 2409595 (N.D. Ill. 2019) ...........................................8, 10, 11

Grinberg v. CareVoyant,
  2011 WL 13217585 (C.D. Cal. 2011) .................................................7

Guadagno v. E*Trade,
  592 F. Supp. 2d 1263 (C.D. Cal. 2008) ..............................................9

Gutierrez v. Jolt Delivery,
  2018 WL 6118581 (C.D. Cal. 2018) ................................................14

Hodges v. Apple,
  640 F. App'x 687 (9th Cir. 2016) .....................................................18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

<u>Hoekman v. Tamko,</u>
2015 WL 9591471 (E.D. Cal. 2015)..................................................14

<u>Holmes v. Johnson & Johnson,</u>
617 F. App'x 639 (9th Cir. 2015)....................................................18

<u>Hoover v. Country Mut. Ins.,</u>
975 N.E.2d 638 (Ill. App. 1st Dist. 2012) ........................................21

<u>Howsam v. Dean Witter,</u>
537 U.S. 79 (2002)...........................................................................15

<u>Hubbert v. Dell Corp.,</u>
835 N.E.2d 113 (Ill. App. 5th Dist. 2005) ..........................................9

<u>In re Dealer Mgmt. Sys. Antitrust Litig.,</u>
2020 WL 832365 (N.D. Ill. 2020) ...........................................15, 17

<u>Johnson v. Uber,</u>
2018 WL 4503938 (N.D. Ill. 2018) ...........................................9, 16

<u>Kacoa Landscaping v. Menard,</u>
2016 WL 4586086 (Ill. App. 2d Dist. 2016) ...............................11, 15

<u>Kilgore v. KeyBank,</u>
673 F.3d 947 (9th Cir. 2012) ..............................................................6

<u>Kim v. Tinder,</u>
2018 WL 6694923 (C.D. Cal. 2018) ................................8, 9, 11, 17

<u>Lee v. Ticketmaster,</u>
817 F. App'x 393 (9th Cir. 2020) .............................................7, 9, 11

<u>Levine v. Millennium Tr.,</u>
2013 WL 12157579 (S.D. Cal. 2013)..................................................7

<u>Lundbom v. Schwan's Home Serv.,</u>
2020 WL 2736419 (D. Or. 2020) .......................................................8

<u>Miller v. Time Warner Cable,</u>
2016 WL 7471302 (C.D. Cal. 2016) .................................................16

<u>Mitsubishi v. Soler,</u>
473 U.S. 614 (1985)...........................................................................6

<u>Moffett v. Recording Radio Film Connection,</u>
2019 WL 6898955 (C.D. Cal. 2019) .................................................17

<u>Mohamed v. Uber,</u>
848 F.3d 1201 (9th Cir. 2016) ..........................................................16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

iv

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

**Page(s)**

Momot v. Mastro,
652 F.3d 982 (9th Cir. 2011) ..................................................15

Nandorf v. Applied Underwriters,
410 F. Supp. 3d 882 (N.D. Ill. 2019)........................................16

Nat'l Painting v. PPG,
2015 WL 1593008 (N.D. Ill. 2015) ..........................................23

Nicosia v. Amazon,
384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019), aff'd,
2020 WL 2988855 (2d Cir. 2020) ...............................................9

Novogroder/San Bernardino v. Cohen Realty Servs.,
2000 WL 556621 (N.D. Ill. 2000) .............................................20

O'Connor v. Uber,
904 F.3d 1087 (9th Cir. 2018) ....................................................6

Oracle Am. v. Myriad Grp.,
724 F.3d 1069 (9th Cir. 2013) ..................................................17

Orchard Park Plaza v. Chubb Custom Ins.,
2018 WL 6728116 (Ill. App. 1st Dist. 2018)............................21

Phoenix Ins. v. Rosen,
949 N.E.2d 639 (Ill. 2011)...........................................................6

Pilgrim Home & Hearth v. Panacea Prod.,
2010 WL 11603083 (C.D. Cal. 2010) .......................................14

Powers v. Corn Prods. Int'l,
557 F. Supp. 2d 921 (N.D. Ill. 2008)........................................22

Pro Water Sols. v Angie's List,
2021 WL 124496 (C.D. Cal. 2021) ..................................18, 19, 20

Quarasan Grp. v. Nozani,
2020 WL 6118536 (N.D. Ill. 2020) ..........................................19

Revitch v. Uber,
2018 WL 6340755 (C.D. Cal. 2018) .........................................17

Roger v. First Health Corp.,
2010 WL 11509054 (C.D. Cal. 2010) ......................7, 18, 19, 20

Shadow v. Empire Carpets,
2009 WL 4047932 (Cal. Ct. App. 2009) .....................................7

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

**Page(s)**

Starke v. Gilt Groupe,
    2014 WL 1652225 (S.D.N.Y. 2014)....................................................9

Sweet Dreams v. Dial-A-Mattress,
    1 F.3d 639 (7th Cir. 1993) ...........................................................11

Temple v. Best Rate Holdings,
    360 F. Supp. 3d 1289 (M.D. Fla. 2018)...........................................10

Willis v. Captain D's,
    2015 WL 179049 (Ill. App. 5th Dist. 2015) ....................................12

Wynn Resorts v. Atlantic-Pacific Cap.,
    497 F. App'x 740 (9th Cir. 2012)...............................................6, 13

Yellow Cab v. New Hampshire Ins.,
    2011 WL 307617 (N.D. Ill. 2011) ................................................17

**STATUTES**

Federal Arbitration Act,
    9 U.S.C. § 1 et seq. ....................................................................6

**OTHER AUTHORITIES**

American Arbitration Rules,
    https://adr.org/sites/default/files/Commercial%20Rules.pdf ...........17

Devin Bayer, Revised External Link Proposal (Sept. 9, 2018),
    https://www.unicode.org/L2/L2018/18303-external-link.pdf ...........3

**RULES**

Fed. R. Civ. P. 12 ..........................................................................18

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CHICAGO

vi

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

# I.    INTRODUCTION

When Plaintiff Bruce Brouillette ("Plaintiff") allegedly purchased tickets to a third-party event through the online marketplace of Defendant Vivid Seats LLC ("Vivid Seats"), Plaintiff expressly agreed to the Terms of Use effective as of November 22, 2019 ("Terms of Use") and, in particular, to the Arbitration and Dispute Resolution ("ADR") provision contained therein. See Terms of Use, Ex. B to Bakal Decl., at 15-16.  The ADR provision contains extensive dispute resolution procedures that require Plaintiff to first provide notice of any dispute related to his purchase of tickets in order to facilitate an informal resolution. See id. at 15.  If an informal resolution cannot be reached, however, the ADR provision expressly requires Plaintiff to submit any and all unresolved disputes and claims to final and binding arbitration on an individual, non-class basis.  See id.

Plaintiff, however, has refused to submit his claims to the final and binding ADR procedures to which he agreed and instead filed this lawsuit.  But as has been repeatedly recognized, federal and state law both strongly favor arbitration in cases such as this, where a valid and enforceable agreement to arbitrate exists.   In accordance with that strong policy and consistent with the procedures set forth in the Terms of Use to which Plaintiff agreed, Vivid Seats respectfully requests that the Court dismiss this case and compel Plaintiff to arbitrate his claims on an individual, non-class basis.

Should the Court nonetheless decline to compel arbitration, it should still dismiss Plaintiff's Complaint for failure to state a claim.  Plaintiff's claims under the California Consumer Legal Remedies Act ("CLRA"), California False Advertising Law ("FAL") and California Unfair Competition Law ("UCL") should be dismissed, because Plaintiff expressly agreed that Illinois law (not California law) applies to this dispute.  His claim of negligent misrepresentation further fails, because he does not and cannot identify any duty that Vivid Seats owed him sufficient to state a claim

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

1

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

and because it is barred by the economic loss doctrine.  And Plaintiff's intentional misrepresentation claim fails, because it is an improper attempt to dress up a breach of contract claim as a claim of fraud.  Plaintiff's claims should thus be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

The factual background relevant to this motion is set forth below.  See disc. infra at 2-5.

### A.  Plaintiff Purchased Tickets Through Vivid Seats And Agreed To The Terms Of Use

On or about February 29, 2020, Plaintiff used the website of Vivid Seats to purchase two tickets to a concert featuring The Rolling Stones.  See Compl. (Dkt. 1) ¶ 33; Brouillette Web Order Details, Ex. A to Bakal Decl., at 3.  In order to purchase tickets through the website of Vivid Seats, Plaintiff entered his name, telephone number and billing, shipping and email addresses.  See Brouillette Web Order at 3. And in order to confirm and place his order, Plaintiff also expressly acknowledged that he "agree[d] to the Vivid Seats terms of use":



Bakal Decl. ¶ 6.  Indeed, directly above the link that Plaintiff clicked to "PLACE ORDER," he was advised that "[b]y clicking 'Place order', you agree to the Vivid Seats terms of use."  Id.

The clause advising Plaintiff that he was agreeing to the Terms of Use appeared directly above the link he was required to click to complete his purchase and was in the same size font as the rest of the text on the order page.  See Bakal Decl. ¶ 4.  Moreover, the phrase "terms of use" in that clause was hyperlinked in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

2

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

blue font and was accompanied by the "external link symbol,"[1] and when clicked, led the customer directly to the Terms of Use, which were effective as of November 22, 2019, well before Plaintiff's purchase in early 2020.  See id. ¶ 5.  As such, Plaintiff could not have completed his ticket purchase through the Vivid Seats website without expressly agreeing to the Terms of Use, which he obviously did. See id. ¶¶ 4-6; Terms of Use at 7 ("By using or visiting this site, or purchasing tickets in any manner from the Vivid Seats Marketplace, you expressly agree to abide and be bound by these Sales Terms[.]").

## B.   The Terms Of Use Contain Arbitration And Dispute Resolution Procedures That Expressly Govern All Disputes Related To Ticket Purchases

The Terms of Use broadly govern the use "of Vivid Seats.com, [its] mobile application, purchases through [its] customer call center and [a customer's] purchase of any product from Vivid Seats LLC."  Terms of Use at 7.  The Terms of Use are explicitly "governed by the laws of the State of Illinois[.]"  Id. at 17.

The ADR provision in the Terms of Use is titled in bolded font "**Arbitration and Dispute Resolution**," is in the same size font as the other provisions and states as follows:

> You and Vivid Seats each agree that any and all disputes, controversies, or claims arising out of or relating to:  (i) these Sales Terms; (ii) your use of, or access to, this site; (iii) Vivid Seats' services; or (iv) any tickets or other items sold or purchased through this site shall be resolved exclusively through final and binding arbitration rather than in court.

Terms of Use at 15.[2]

---

[1] The symbol, a square with an arrow going through its top right corner, is commonly used across the Internet to mark hyperlinks that send the user outside the current webpage he or she is viewing to another webpage.  See Devin Bayer, Revised External Link Proposal (Sept. 9, 2018), https://www.unicode.org/L2/L2018/18303-external-link.pdf.  Despite its prevalence online, the symbol cannot yet be reproduced in Microsoft Word, the word processor used by Vivid Seats to prepare this memorandum.  See id. (explaining that the symbol has not been added to Unicode Standard and proposing that it should be added).

[2] Unless stated otherwise, all emphasis is supplied in this memorandum, and all internal citations and quotations are omitted from all quoted material herein.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

3

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

Before a purchaser can initiate arbitration, he or she "must first send" Vivid Seats "a completed Intent to Arbitrate Notice." Terms of Use at 15. Only if the parties are then "unable to resolve the dispute described in the Intent Notice within thirty (30) days after the Intent Notice is sent" may a purchaser "initiate an arbitration proceeding." Id. And as specified in the Terms of Use, the "arbitration will be conducted by the American Arbitration Association ('AAA') in accordance with its Commercial Arbitration Rules," as modified, and the decision of the arbitrator "shall be final and binding." Id. Moreover, the parties agreed that the "Federal Arbitration Act governs the interpretation and enforcement of this agreement to arbitrate." Id. Importantly, the Terms of Use further specify that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this agreement to arbitrate." Id.

### C. Plaintiff Waived Any Right To File Class Litigation Or To Proceed In A Representative Capacity Or As A Class Member

In addition to requiring arbitration, the ADR provision also includes a class action waiver. See Terms of Use at 16. The Terms of Use provide, in all capital letters, as follows:

> YOU AND VIVID SEATS AGREE THAT EACH MAY ONLY BRING CLAIMS AGAINST THE OTHER ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING . . . .

Id.

The Terms of Use further provide, again in all capital letters, as follows:

> . . . THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING.

Id. Plaintiff thus plainly agreed to submit his dispute to arbitration on an individual, non-class basis and to not act or seek to act as a class representative. See id.

### D. Plaintiff Files A Class Action Complaint In Federal Court Despite The Express Agreement To Arbitrate Such Claims On An Individual Basis

Notwithstanding the agreement to arbitrate, Plaintiff filed his Complaint in this Court on November 5, 2020, alleging claims for violations of the California CLRA, FAL and UCL, negligent misrepresentation and intentional misrepresentation.  See Compl. ¶¶ 32-120.  All of Plaintiff's claims, however, turn on his allegation that he bought tickets to a third-party event through the online marketplace of Vivid Seats and that that event was cancelled due to COVID-19.  See id.  Plaintiff, in turn, alleges that Vivid Seats purportedly failed to honor its promise to refund the purchase price of the tickets to the cancelled event.  See id. ¶¶ 70, 83, 96, 102, 109, 117.

In addition to asserting claims on his own behalf, Plaintiff seeks to represent a class of individuals defined as follows:

> All persons residing in California who used Vivid Seats to purchase one or more tickets to any event which was subsequently canceled or constructively canceled at any point within four years prior to the filing of this action until the date that notice of this class action is disseminated to the Class, and to whom Defendant has not provided a full refund, including all fees.

Compl. ¶ 51.  Plaintiff seeks to proceed in a representative capacity, notwithstanding that he waived the right to act as a class representative.  See Terms of Use at 16.

Plaintiff did not serve Vivid Seats with an intent to arbitrate, nor did he or his counsel pursue arbitration to resolve Plaintiff's claims, as required by the ADR provision in the Terms of Use.  See Terms of Use at 15.  As such, Plaintiff has plainly failed to comply with the dispute resolution procedures to which he agreed.  See disc. supra at 3-4.

## III.  ARGUMENT

The basis for Vivid Seats' motion is set forth below.  See disc. infra at 5-23.

### A. The Court Should Dismiss Plaintiff's Complaint And Compel Arbitration

There is, without question, a strong federal policy in favor of arbitration.  See,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

5

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

e.g., AT&T v. Concepcion, 563 U.S. 333, 339 (2011); Ferguson v. Corinthian Colleges, 733 F.3d 928, 932 (9th Cir. 2013); O'Connor v. Uber, 904 F.3d 1087, 1093 (9th Cir. 2018).[3] This policy is manifest in the FAA, which provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; see also Kilgore v. KeyBank, 673 F.3d 947, 955 (9th Cir. 2012); Ajzenman v. Office of Comm'r of Baseball, 2020 WL 6037140, at *3 (C.D. Cal. 2020). The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements." Kilgore, 673 F.3d at 955; see also Concepcion, 563 U.S. at 339.

"By its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration provision has been signed." Ajzenman, 2020 WL 6037140, at *3 (emphasis in original); Ajzenman v. Office of Comm'r of Baseball, 2020 WL 6031899, at *2 (C.D. Cal. 2020). In deciding whether to compel arbitration, a court must determine two "gateway" issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." Ajzenman, 2020 WL 6037140, at *3; Ajzenman, 2020 WL 6031899, at *3. "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Wynn Resorts v. Atlantic-Pacific Cap., 497 F. App'x 740, 743 (9th Cir. 2012) (emphasis in original). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Eagle Star Ins. v. Highlands Ins., 165 F. App'x 529, 531 (9th Cir. 2006); see also Mitsubishi v. Soler, 473 U.S. 614, 626 (1985).

---

[3] The Terms of Use are governed by Illinois law, and Vivid Seats thus cites both federal and Illinois law herein. See Terms of Use at 17. Illinois law similarly has a strong policy in favor of arbitration. See Phoenix Ins. v. Rosen, 949 N.E.2d 639, 647 (Ill. 2011) ("[P]ublic policy in Illinois favors arbitration."). Importantly, however, the FAA and federal law limit the ability of state law to invalidate an arbitration agreement. See, e.g., Concepcion, 563 U.S. at 346-52.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

6

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1    Dismissal based on an arbitration provision can be sought pursuant to Federal

2    Rules of Procedure 12(b)(1), 12(b)(3) and/or 12(b)(6).  See, e.g., Daisley v. Blizzard

3    Music, 2017 WL 1628399, at *3 (C.D. Cal. 2017).   The Ninth Circuit has held,

4    however, that where all claims in a dispute are subject to arbitration, "dismissal is

5    the appropriate remedy."  Id. at *8 (district courts in the Ninth Circuit "routinely"

6    dismiss claims subject to arbitration).

7    **B.  Plaintiff And Vivid Seats Entered Into A**
     **Valid, Written Agreement To Arbitrate**
8

9        In this case, there can be no legitimate dispute that Plaintiff and Vivid Seats

10   entered into a valid and binding agreement that requires binding arbitration.   "To

11   determine whether a valid arbitration agreement exists, federal courts ordinarily

12   apply ordinary state-law principles that govern the formation of contracts."  Lee v.

13   Ticketmaster, 817 F. App'x 393, 394 (9th Cir. 2020) (affirming order compelling

14   arbitration of ticket purchaser's claims where purchaser agreed to terms of use

15   containing arbitration provision).[4]

16

17   ────────────────────
     [4] The parties agreed to a choice-of-law provision whereby the Terms of Use and the
     purchases of tickets thereunder would be governed by Illinois law.  See Terms of
18   Use at 17.  "Where a choice of law provision exists in a private contract, California
     courts will generally honor the provision."  Shadow v. Empire Carpets, 2009 WL
19   4047932, at *3 (Cal. Ct. App. 2009).  "Federal courts sitting in diversity apply the
     law of the forum state in determining whether to enforce a contractual choice of law
20   provision."  Roger v. First Health Corp., 2010 WL 11509054, at *6 (C.D. Cal. 2010)
     (applying Illinois law).   Under California choice-of-law rules, the Court should
21   enforce the parties' choice-of-law provision if one of the parties has a substantial
     relationship with Illinois or there is another reasonable basis for the parties' choice-
22   of-law and where Illinois law is not contrary to fundamental California policy.  See,
     e.g., Grinberg v. CareVoyant, 2011 WL 13217585, at *4 (C.D. Cal. 2011) (applying
23   Illinois law).  Vivid Seats has a substantial relationship with Illinois, because its
     headquarters and principal place of business are in Illinois.  See Bakal Decl. ¶ 1;
24   Compl. ¶ 12.  And California courts have consistently found that the application of
     Illinois contract law to enforce arbitration provisions is not contrary to fundamental
25   California policy.  See, e.g., Grinberg, 2011 WL 13217585, at *4 ; Shadow, 2009
     WL 4047932, at *7 ("Illinois law regarding the enforcement of arbitration
26   agreements is not contrary to any fundamental policy of California."); Levine v.
     Millennium Tr., 2013 WL 12157579, at *3 (S.D. Cal. 2013) (enforcing Illinois
27   choice-of-law provision and holding that "there is no material conflict between the
     laws of Illinois and California as both states have a fundamental policy of refusing
28   to enforce unconscionable arbitration provisions").

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

7

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

The Terms of Use to which Plaintiff agreed contain a clear and unambiguous agreement that "any and all disputes, controversies, or claims arising out of or relating to" either "these Sales Terms" (i.e., the Terms of Use), the "use of, or access to" the Vivid Seats website, "Vivid Seats' services" or "any tickets or other items sold or purchased through" Vivid Seats "shall be resolved exclusively through final and binding arbitration rather than in court."   Terms of Use at 15.   The ADR provision is clearly marked with a boldfaced heading and is in the same font size as the other portions of the Terms of Use, rendering it conspicuous.  See, e.g., Davis v. Fenton, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) ("An arbitration clause does not need to be emphasized with any special font or typeface . . . it just needs to be conspicuous."); see also Dohrmann v. Intuit, 823 F. App'x 482, 484 (9th Cir. 2020) ("relevant warning language and hyperlink" to terms of use were "conspicuous," therefore providing "sufficient notice").  Plaintiff affirmatively agreed to the Terms of Use -- including the ADR provision -- when he completed his purchase on the Vivid Seats website.  See Bakal Decl. ¶¶ 5-6.  Indeed, Plaintiff was alerted that "[b]y clicking 'Place order', you agree to the Vivid Seats terms of use," and he proceeded to click "Place order" to complete his purchase.  See id.; disc. supra at 2-3.

Courts applying Illinois contract law routinely hold that similar "hybridwrap" agreements are valid and enforceable, and they routinely compel arbitration based upon such agreements.[5]  See, e.g., Gorny v. Wayfair, 2019 WL 2409595, at *5 (N.D. Ill. 2019) (enforcing arbitration agreement contained in a hybridwrap agreement, where plaintiff clicked order button that was below the message, "By placing an order, you are agreeing to our Privacy Policy and Terms of Use," and the "Privacy

---

[5] Hybridwrap agreements "prompt the user to manifest assent to particular terms by engaging in some dual-purpose action, such as creating an account or making a purchase."  Lundbom v. Schwan's Home Serv., 2020 WL 2736419, at *4 (D. Or. 2020).  Hybridwrap agreements are "fully enforceable."  See, e.g., Kim v. Tinder, 2018 WL 6694923, at *2 (C.D. Cal. 2018); see also, e.g., Lundbom, 2020 WL 2736419, at *8-9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

8

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1   Policy" and "Terms of Use" were hyperlinked); <u>Johnson v. Uber</u>, 2018 WL
2   4503938, at *4 (N.D. Ill. 2018) (enforcing arbitration agreement against Uber
3   account holder where the terms were hyperlinked in the message, "By creating an
4   Uber account, you agree to the Terms of Service & Privacy Policy"); <u>Hubbert v. Dell</u>
5   <u>Corp.</u>, 835 N.E.2d 113, 120-22 (Ill. App. 5th Dist. 2005) (enforcing arbitration
6   agreement where webpage upon which plaintiffs completed their purchases stated,
7   "All sales are subject to Dell's Term[s] and Conditions of Sale," linking to the
8   terms); <u>see also</u> <u>Lee</u>, 817 F. App'x at 394 (affirming order compelling arbitration of
9   ticket purchaser's claims where purchaser clicked "Place Order" button next to
10  message alerting him that by doing so, he agreed to terms of use); <u>Starke v. Gilt</u>
11  <u>Groupe</u>, 2014 WL 1652225, at *3-4 (S.D.N.Y. 2014); <u>Guadagno v. E*Trade</u>, 592 F.
12  Supp. 2d 1263, 1271 (C.D. Cal. 2008).

13      Specifically, "[c]ourts will give effect to hybridwrap terms where the button
14  required to perform the action manifesting assent (<u>e.g.</u>, signing up for an account or
15  executing a purchase) is located directly next to a hyperlink to the terms and a notice
16  informing the user that, by clicking the button, the user is agreeing to those terms."
17  <u>Nicosia v. Amazon</u>, 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019), <u>aff'd</u>, 2020 WL
18  2988855 (2d Cir. 2020).  Such is plainly the case here.  Plaintiff assented to the
19  Terms of Use by clicking "Place order," which was directly below the message, "By
20  clicking 'Place order', you agree to the Vivid Seats terms of use." <u>See</u> disc. <u>supra</u> at
21  2-3.  The message and button were set aside in their own box, and the words "terms
22  of use" were in blue and included a symbol, each of which alerted the user that the
23  words were hyperlinked for his or her review.  <u>See</u>, <u>e.g.</u>, <u>Hubbert</u>, 835 N.E.2d at 121
24  ("A person using a computer quickly learns that more information is available by
25  clicking on a blue hyperlink."); <u>Kim</u>, 2018 WL 6694923, at *2 (plaintiff was "free
26  to review" hyperlink to terms of use each time she logged into the app); <u>see also</u>
27  disc. <u>supra</u> at 2-3.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

9

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In fact, Vivid Seats' purchase page is nearly identical to the one in <u>Gorny</u>, where the court compelled arbitration:



<u>Gorny</u>, 2019 WL 2409595, at *1.

Bakal Decl. ¶ 4.  Moreover, the format of the Vivid Seats website provides even greater notice to the customer than the format of the one in <u>Gorny</u>, because the message providing notice to the user of the Terms of Use and the implications of clicking "Place order" is above the "Place order" button rather than below it.  <u>See</u>, <u>e.g.</u>, <u>Temple v. Best Rate Holdings</u>, 360 F. Supp. 3d 1289, 1304-05, 1313 (M.D. Fla. 2018) (granting motion to compel arbitration, in part, because the link to the terms was above the button users clicked to assent).  Plaintiff clicked that "Place order" button, and in so doing, affirmatively accepted the Terms of Use and is thus bound by them.  <u>See</u> <u>id.</u>; <u>Gorny</u>, 2019 WL 2409595, at *5-6.

To that end, another court in this district recently compelled the arbitration of claims brought against competitors of Vivid Seats based on the terms of "hybridwrap" agreements similar to the Terms of Use, as has the Ninth Circuit.  <u>See</u> <u>Ajzenman</u>, 2020 WL 6031899, at *2-4 (plaintiff agreed to arbitrate claims against Ticketmaster when she clicked order button that was below the message, "By continuing past this page and clicking 'Place Order,' you agree to our Terms of Use," and "Terms of Use" that contained arbitration provision were hyperlinked); <u>Ajzenman</u>, 2020 WL 6037140, at *2, 4-6 (plaintiffs agreed to arbitrate claims against

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

10

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

StubHub where they were alerted, prior to signing into their StubHub accounts, that "[b]y purchasing or signing in, you agree to our user agreement and acknowledge our privacy notice" and "user agreement" that contained arbitration provision were hyperlinked); <u>Lee</u>, 817 F. App'x at 395 (plaintiff agreed to Ticketmaster's terms of use when he clicked "Place Order" and was warned, "By clicking 'Place Order,' you agree to [Ticketmaster's] Terms of Use," and "'Terms of Use' was displayed in blue font and contained a hyperlink to Ticketmaster's Terms.").

### C. This Dispute Plainly Falls Within The Scope Of The Arbitration Provision To Which Plaintiff Agreed

As noted, <u>both</u> federal law as well as Illinois law <u>strongly</u> favor arbitration. <u>See</u>, <u>e.g.</u>, <u>Ferguson</u>, 733 F.3d at 932 (9th Cir. 2013); <u>Kacoa Landscaping v. Menard</u>, 2016 WL 4586086, at *4 (Ill. App. 2d Dist. 2016).  This strong policy in favor of arbitration requires that any and all doubts regarding the scope of an arbitration clause should be resolved in favor of arbitration.  <u>See</u> <u>Eagle Star Ins.</u>, 165 F. App'x at 531; <u>Kacoa</u>, 2016 WL 4586086, at *4.  The Terms of Use are, however, broad and clearly require Plaintiff to arbitrate "<u>any</u> <u>and</u> <u>all</u> disputes, controversies, or claims <u>arising</u> <u>out</u> <u>of</u> <u>or</u> <u>relating</u> <u>to</u>" the Terms of Use, Plaintiff's "use" of the Vivid Seats website, "Vivid Seats' services" or "<u>any</u> tickets or other items sold or purchased through" the Vivid Seats website.  <u>See</u> Terms of Use at 15.  And courts have consistently held that such language should be construed broadly in favor of arbitration.  <u>See</u>, <u>e.g.</u>, <u>Kim</u>, 2018 WL 6694923, at *3 n.5 (finding it "clear" that arbitration agreement encompasses claims where plaintiff agreed to arbitrate "any dispute or claim arising out of or relating to" the agreement); <u>Sweet Dreams v. Dial-A-Mattress</u>, 1 F.3d 639, 642 (7th Cir. 1993) (interpreting "arising out of" broadly and construing the phrase to "reach[] all disputes having their origin or genesis in the contract"); <u>Gorny</u>, 2019 WL 2409595, at *3 (similarly interpreting "arising from or relating to" broadly); <u>Willis v. Captain D's</u>, 2015 WL 179049, at *11 (Ill. App.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

11

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

5th Dist. 2015) (arbitration clauses that have both "arising out of" and "relating to" are "nonspecific and nonlimiting in what falls within the scope" and must be construed broadly).

Especially in light of the broad language of the ADR provision, the claims made in Plaintiff's Complaint plainly fall within the scope of the arbitration clause. See Compl. ¶¶ 32-120. Plaintiff alleges that he and members of the proposed class "used Vivid Seats to purchase tickets to [an] event which was subsequently canceled" following the onset of the COVID-19 pandemic and that they have not received a "full refund, including all fees." Id. ¶ 51 (definition of proposed class); see also id. ¶ 1 (Plaintiff and members of the proposed class "purchased one or more event tickets for events that were cancelled and for which a full refund was not provided by Defendant."); id. ¶¶ 32-48 (discussing Plaintiff's ticket purchase).

Each and every one of Plaintiff's causes of action relates to his alleged purchase of tickets through Vivid Seats and Vivid Seats' alleged failure to refund the price of those tickets after the cancellation of the event due to the COVID-19 pandemic. See Compl. ¶¶ 1, 33, 41, 51, 64, 66, 68, 70, 78, 81, 83-85, 89, 96, 102, 108-11, 116-19. The claims for violation of the California CLRA, FAL and UCL, for example, are all based on Plaintiff's purchase of tickets through Vivid Seats. See, e.g., id. ¶ 66 ("Plaintiff and each of the putative Class members' purchase of Defendants' tickets constitutes a 'transaction' as defined pursuant to Civil Code Section 1761(e)."); id. ¶ 83 (If not for Vivid Seats' allegedly wrongful conduct, "Plaintiff and the putative Class member would not have purchased tickets to events through Defendant, or would have paid less to Defendant."); id. ¶ 85 (Plaintiff was "led to purchase tickets on Defendant's platform."); id. ¶ 96 (But for Vivid Seats' alleged conduct, Plaintiff "would not have purchased the tickets on Defendant's platform or would have paid less.").

Plaintiff's claims for negligent misrepresentation and intentional

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

12

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1    misrepresentation likewise turn on allegations that Plaintiff purchased tickets

2    through Vivid Seats' online marketplace.  See Compl. ¶ 109 (alleging Plaintiff "saw,

3    believed, and relied upon Defendant's representations in making the decision to

4    purchase on Defendant's platform."); id. ¶ 111 (alleging Plaintiff was "induced to

5    purchase through Defendant's online platform"); id. ¶ 117 (alleging Plaintiff "saw,

6    believed, and relied upon Defendant's representations in making the decision to use

7    Defendant's online marketplace to purchase tickets"); id. ¶ 119(iii) ("The 'when' is

8    the date Plaintiff purchased the tickets through Defendant's website.").  Plaintiff's

9    claims thus plainly raise disputes that "aris[e] out of" or "relat[e] to . . . tickets . . .

10   sold or purchased through" Vivid Seats.  See Terms of Use at 15.  The claims also

11   arise out of or relate to the "use" of the Vivid Seats website as well as "Vivid Seats'

12   services."  Id.  And because the Terms of Use reference the buyer guarantee (see id.

13   at 7-8), Plaintiff's claims also arise out of or relate to the Terms of Use themselves.

14   See id. at 15.

15       Indeed, a federal court in Texas recently compelled arbitration of tort and

16   statutory claims brought by a ticket purchaser against another online marketplace

17   under an arbitration provision governed by Illinois law.  See Fils v. Internet Referral

18   Servs., 2020 WL 77709345, at *1, *3 (S.D. Tex. 2020) (applying Illinois law and

19   compelling arbitration where plaintiff agreed to arbitrate "all disputes, controversies,

20   or claims arising out of or relating to" the terms of use to which she agreed, her "use"

21   of the defendant's website, the defendant's services or "any tickets or other items

22   sold or purchased through" the defendant's website).

23       Given the allegations in the Complaint and the breadth of the ADR provision

24   to which he agreed, Plaintiff's claims are clearly subject to arbitration, particularly

25   in light of the strong policy in favor of arbitration.  See, e.g., Concepcion, 563 U.S.

26   at 339 ("[C]ourts must place arbitration agreements on an equal footing with other

27   contracts and enforce them according to their terms."); Wynn Resorts, 497 F. App'x

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

13

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1   at 743 (arbitration must be ordered unless it can be said "with <u>positive</u> <u>assurance</u> that

2   the arbitration clause is not susceptible of an interpretation that covers the asserted

3   dispute" (emphasis in original)); <u>Pilgrim Home & Hearth v. Panacea Prod.</u>, 2010

4   WL 11603083, at *3 (C.D. Cal. 2010) (compelling plaintiff to arbitrate claims of

5   fraudulent and negligent misrepresentation related to contract formation where

6   plaintiff had agreed to arbitrate "[a]ny dispute, controversy or claim <u>arising</u> <u>out</u> <u>of</u>

7   or <u>relating</u> <u>to</u>" to the contract (emphasis and alteration in original)); <u>Hoekman v.</u>

8   <u>Tamko</u>, 2015 WL 9591471, at *7 (E.D. Cal. 2015) (compelling arbitration of

9   plaintiff's claims under California consumer protection statutes related to purchase

10  of shingles where plaintiff had agreed to arbitrate any claims "relating to or arising

11  out of the shingles").

### D.  Plaintiff Must Arbitrate His Dispute On A Non-Class Basis

13          Contractual provisions through which parties expressly waive their right to

14  proceed as class representatives are equally valid and enforceable.   <u>See</u>, <u>e.g.</u>,

15  <u>Castorena v. Charter Commc'ns</u>, 2018 WL 10806903, at *5 (C.D. Cal. 2018)

16  (holding that class action waivers are enforceable under federal law); <u>Brown v.</u>

17  <u>Luxottica</u>, 2010 WL 3893820, at *6 (N.D. Ill. 2010) (applying Illinois law and

18  enforcing class action waiver); <u>see</u> <u>also</u> <u>Gutierrez v. Jolt Delivery</u>, 2018 WL

19  6118581, at *4 (C.D. Cal. 2018) (class action waivers enforceable under California

20  law).  Plaintiff agreed that he "may only bring claims against" Vivid Seats "on an

21  individual basis and not as a Plaintiff or class member in any purported class or

22  representative action or proceeding."  <u>See</u> Terms of Use at 16.  Plaintiff further

23  agreed that "the arbitrator may not consolidate or join more than one person's or

24  party's claims, and may not otherwise preside over any form of a consolidated,

25  representative, or class proceeding."  <u>Id.</u>

26          This agreement to not participate in class action litigation is valid and fully

27  enforceable under Illinois law.  <u>See</u>, <u>e.g.</u>, <u>Brown</u>, 2010 WL 3893820, at *6.  In fact,

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

14

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

class action waivers are fully enforceable where a plaintiff was given the opportunity to opt out of the waiver.  See id. at *2-4 (enforcing waiver, in part, because plaintiffs were given 30 days to opt out).  In this instance, Plaintiff was provided with the opportunity to opt out of the ADR provision, including the class waiver, by providing written notice to Vivid Seats within 30 days of the date he first accessed the Vivid Seats website.  See Terms of Use at 16.  Plaintiff, however, did not opt out of the ADR provision pursuant to its terms, and the Court should thus compel Plaintiff to arbitrate on a non-class basis only.  See disc. supra at 3-4.

### E.  The Arbitrator Should Resolve Any Remaining Disputes (If Any) Regarding Whether The Dispute Is Subject To Arbitration

As discussed, the policy in favor of arbitration is strong, and all doubts should be resolved in favor of arbitration.  See Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011).  To the extent a dispute remains, however, as to whether the Terms of Use (including the ADR provision) are an enforceable agreement and whether Plaintiff's claims are subject to arbitration, the arbitrator is to decide that dispute, as specified in the Terms of Use.  See disc. infra at 15-17; Kacoa, 2016 WL 4586086, at *5 (under Illinois law, if it is "unclear whether the dispute falls within the arbitration clause, the trial court should . . . refer the matter to the arbitrator to decide the issue of substantive arbitrability").

The parties to a contract may agree to place the question of whether a particular dispute is subject to arbitration with the arbitrator, rather than a court, so long as they do so "clearly and unmistakably."  Howsam v. Dean Witter, 537 U.S. 79, 84 (2002); see also, e.g., Momot, 652 F.3d at 987; In re Dealer Mgmt. Sys. Antitrust Litig., 2020 WL 832365, *6 (N.D. Ill. 2020).  Plaintiff and Vivid Seats agreed to have the arbitrator decide questions of arbitrability, and that agreement is evidenced "clearly and unmistakably" in at least three ways.  See disc. infra at 16-17.

First, the Terms of Use state that "[t]he arbitrator, and not any federal, state,

1   or local court or agency, shall have <u>exclusive</u> authority to resolve any dispute arising

2   out of or relating to the interpretation, applicability, enforceability or formation of

3   this agreement to arbitrate, any part of it, or of these [Terms of Use] including, but

4   not limited to, any claim that all or any part of this agreement to arbitrate or the

5   [Terms of Use] is void or voidable." <u>See</u> Terms of Use at 15.  And courts routinely

6   enforce contractual agreements like this in which the parties agreed the arbitrator

7   rather than the Court shall decide questions related to arbitrability.   <u>See</u>, <u>e.g.</u>,

8   <u>Mohamed v. Uber</u>, 848 F.3d 1201, 1209 (9th Cir. 2016) (holding parties agreed to

9   have arbitrator decide arbitrability where agreement delegated to the arbitrator the

10  authority to decide issues relating to the "enforceability" of the arbitration

11  provision); <u>Miller v. Time Warner Cable</u>, 2016 WL 7471302, at *5 (C.D. Cal. 2016)

12  (arbitrator to decide arbitrability where agreement explicitly provided that "claims

13  relating to whether arbitration is appropriate" would be decided by "arbitrator, not a

14  court"); <u>see</u> <u>also</u> <u>Bayer v. Comcast</u>, 2013 WL 1849519, at *1 (N.D. Ill. 2013).

15       <u>Second</u>, the Terms of Use state that "any and all disputes . . . arising out of or

16  relating to" the Terms of Use "shall be resolved exclusively though final and binding

17  arbitration rather than in court." <u>See</u> Terms of Use at 15.  When an agreement

18  commits disputes related to the agreement itself to arbitration, the question of

19  arbitrability of any dispute is therefore one for the arbitrator.  <u>See</u> <u>Flores v. Uber</u>,

20  2018 WL 5937253, at *4 (C.D. Cal. 2018) (issue of arbitrability for arbitration where

21  agreement expressly provides that "disputes arising out of or relating to the

22  interpretation or application" of arbitration provision shall be decided by arbitrator);

23  <u>see also</u> <u>Nandorf v. Applied Underwriters</u>, 410 F. Supp. 3d 882, 889 (N.D. Ill. 2019)

24  (question of arbitrability for arbitrator where parties agreed that "[a]ll disputes

25  arising with respect to any provision of this Agreement" were subject to arbitration

26  clause); <u>Johnson</u>, 2018 WL 4503938, at *5 (arbitrator to decide arbitrability where

27  "any dispute" about agreement's "interpretation" was subject to arbitration).

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

16

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

**Third**, the Terms of Use state that any arbitration between the parties "will be conducted by the American Arbitration Association . . . in accordance with its Commercial Arbitration Rules, as modified by this agreement to arbitrate." See Terms of Use at 15.  "Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Oracle Am. v. Myriad Grp., 724 F.3d 1069, 1074 (9th Cir. 2013) (citing cases); see also Ali v. Vehi-Ship, 2017 WL 5890876, at *3 (N.D. Ill. 2017).  Because the AAA Commercial Arbitration Rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including . . . the arbitrability of any claim" (AAA Rules, https://adr.org/sites/default/files/ Commercial%20Rules.pdf, at § 7(a)), incorporation by reference of the AAA Rules is further clear and unmistakable evidence of an intention to arbitrate arbitrability. See Fadal Machining Ctrs. v. Compumachine, 461 F. App'x 630, 632 (9th Cir. 2011); see also, e.g., Kim, 2018 WL 6694923, at *3; In re Dealer Mgmt., 2020 WL 832365, *5; Yellow Cab v. New Hampshire Ins., 2011 WL 307617, at *4 (N.D. Ill. 2011).  Accordingly, the arbitrator should resolve any dispute as to whether Plaintiff's claims fall within the scope of the ADR provision in the Terms of Use. See Allen v. Shutterfly, 2020 WL 5517172, at *4-5 (N.D. Cal. 2020).[6]

### F.  The Court Should Alternatively Dismiss Plaintiff's Claims For Failure To State A Claim

In the event the Court does not compel arbitration of Plaintiff's claims based upon the ADR provision to which he agreed, the Court should still dismiss each of Plaintiff's claims for failing "to state a claim upon which relief can be granted." Fed.

---

[6] Notably, the parties also delegated questions related to what relief can be pursued in arbitration to the arbitrator.  See Terms of Use at 15 (delegating "any dispute[s] arising out of or relating to the interpretation, applicability, enforceability" related to the Terms of Use to the arbitrator); Moffett v. Recording Radio Film Connection, 2019 WL 6898955, at *7 (C.D. Cal. 2019); Revitch v. Uber, 2018 WL 6340755, at *5 (C.D. Cal. 2018).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

17

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

R. Civ. P. 12(b)(6).   A complaint fails to state a claim either when it lacks a cognizable legal theory or when it fails to allege sufficient facts to support a cognizable legal theory.  See Hodges v. Apple, 640 F. App'x 687, 689 (9th Cir. 2016); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Holmes v. Johnson & Johnson, 617 F. App'x 639, 642 (9th Cir. 2015).

### 1.   Illinois Law Applies To Each Of Plaintiff's Claims

All of Plaintiff's claims arise from his purchase of tickets pursuant to the Terms of Use.  See disc. supra at 12-14.  The Terms of Use contain a valid and enforceable choice-of-law provision that provides that "[t]hese Sales Terms, the use of vividseats.com and [Vivid Seats'] mobile application, and any purchases of tickets hereunder will be governed by the laws of the State of Illinois, without reference to conflict of law principles."  See Terms of Use at 17.  "Federal courts sitting in diversity apply the law of the forum state in determining whether to enforce a contractual choice of law provision."  Roger, 2010 WL 11509054, at *6.

Prior to engaging in that analysis, however, a court must determine whether the plaintiff's claims fall within the scope of the choice-of-law provision by interpreting the contract pursuant to the chosen law.  See Pro Water Sols. v Angie's List, 2021 WL 124496, at *5 (C.D. Cal. 2021).  Under Illinois law, the choice-of-law provision in the Terms of Use is broad enough to encompass all disputes between the parties, including the statutory and common law claims here, given that the Terms of Use cover not only disputes regarding the Terms of Use themselves but also any disputes related to "the use of vividseats.com and [Vivid Seats'] mobile

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

18

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1  application, and any purchases of tickets hereunder."[7]  <u>See</u>, <u>e.g.</u>, Terms of Use at 17;

2  <u>Facility Wizard</u>, 647 F. Supp. 2d at 943-44 (choice-of-law provision stating that all

3  agreements and rights and obligations thereunder would be "governed by the

4  substantive law of State of Illinois" was broad enough to encompass tort claims); <u>see</u>

5  <u>also</u> Quarasan Grp. v. Nozani, 2020 WL 6118536, at *1-2 (N.D. Ill. 2020) (provision

6  that stated the agreement and all transactions thereunder "shall be governed by,

7  construed and enforced in accordance with" chosen law was broad enough to

8  encompass statutory claims).

9       Since Plaintiff's claims plainly fall within the choice-of-law provision to

10  which Plaintiff agreed, the question is then whether California choice-of-law rules

11  preclude the application of Illinois law to his claims.   <u>See</u> <u>Roger</u>, 2010 WL

12  11509054, at *6-7.  They do not.  California will apply the law indicated by a choice-

13  of-law provision where (as here) the chosen state has a substantial relationship to the

14  parties and the chosen state's law is not contrary to a fundamental policy of

15  California.  <u>See</u> <u>id.</u>  Vivid Seats is headquartered and has its principal place of

16  business in Illinois, such that Illinois has a sufficient relationship to the dispute.  <u>See</u>

17  Compl. ¶ 12 (alleging Vivid Seats has "its principal place of business in Chicago,

18  Illinois"); Bakal Decl. ¶ 1; <u>Bustan v. CareVoyant</u>, 2011 WL 13217581, at *3 (C.D.

19  Cal. 2011) (Illinois had substantial relationship to corporation "with its principle

20  [sic] place of business in Illinois").  And application of Illinois law is not contrary

21  to fundamental California policy.  <u>See</u>, <u>e.g.</u>, <u>Pro Water</u>, 2021 WL 124496, at *6

22  (dismissing California UCL claim given Indiana choice-of-law provision and noting

23  that UCL claim "did not implicate fundamental California policy so as to bar

24

25  _____

    [7] Plaintiff's tort and statutory claims are also subject to Illinois law for another
26  reason:  they are dependent on the parties' contract.  <u>See</u>, <u>e.g.</u>, <u>Facility Wizard</u>
    <u>Software v. Se. Tech. Servs.</u>, 647 F. Supp. 2d 938, 944 (N.D. Ill. 2009) (choice-of-
27  law provision broad enough to cover non-contract claims and, in any event, non-
    contract claims were "closely related to the parties' contractual relationship" such
28  that Illinois law applied).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

19

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1  enforcement of a choice-of-law-provision"); <u>Cardonet v. IBM</u>, 2007 WL 518909, at

2  \*4-5 (N.D. Cal. 2007) (New York choice-of-law provision enforceable as to

3  plaintiff's California UCL, fraud and negligent misrepresentation claims).

## 2.   Plaintiff's Statutory Claims All Fail

5       Plaintiff attempts to plead three statutory causes of action under the California

6  CLRA, FAL and UCL.  <u>See</u> Compl. ¶¶ 62-104.  But as already discussed, Plaintiff

7  plainly agreed that Illinois law -- and <u>not</u> California law -- governs all of his claims.

8  <u>See</u> disc. <u>supra</u> at 18-20; Terms of Use at 17; <u>Pro Water</u>, 2021 WL 124496, at \*7

9  (dismissing California UCL claim, because Indiana law governed dispute); <u>Roger</u>,

10  2010 WL 11509054, at \*8 (dismissing California statutory claims, because the

11  parties' contract was governed by Illinois law); <u>see also</u> <u>Novogroder/San Bernardino</u>

12  <u>v. Cohen Realty Servs.</u>, 2000 WL 556621, at \*5-6 (N.D. Ill. 2000) (dismissing

13  statutory consumer protection claim under Illinois law, because contract contained

14  a New York choice-of-law provision).  Because Plaintiff agreed that his dispute is

15  governed by Illinois law, each of his California statutory claims must be dismissed.

16  <u>See</u>, <u>e.g.</u>, <u>Pro Water</u>, 2021 WL 124496, at \*7 ("[A] valid choice-of-law provision

17  selecting another state's law is grounds to dismiss a claim under California's UCL");

18  <u>Brazil v. Dell</u>, 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008) (dismissing FAL, UCL,

19  and CLRA claims, because contract contained valid Texas choice-of-law provision).

## 3.   Plaintiff's Negligent Misrepresentation Claim Also Fails

21       In order to plead a claim for negligent misrepresentation, a plaintiff must

22  allege "a duty owed by the defendant to communicate accurate information to the

23  plaintiff." <u>Demarco v. CC Servs.</u>, 2017 WL 1148752, at \*5 (Ill. App. 1st Dist. 2017).

24  Illinois courts have recognized this duty in only two limited circumstances, neither

25  of which apply here:  (1) "to avoid negligently conveying false information that

26  results in physical injury to a person or harm to property;" and (2) "where one is in

27  the business of supplying information for the guidance of others in their business

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

20

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1   transactions." Id.   Indeed, "negligent misrepresentation actions are almost

2   universally limited to situations involving a defendant who, in the course of his

3   business or profession, supplies information for the guidance of others in their

4   business relations with third parties." Hoover v. Country Mut. Ins., 975 N.E.2d 638,

5   648 (Ill. App. 1st Dist. 2012); see also First Midwest Bank v. Stewart Title Guar.,

6   843 N.E.2d 327, 342 (Ill. 2006) (affirming dismissal of claim for lack of duty,

7   because defendant was not in the business of supplying information for the guidance

8   of others in their business transactions).

9       Plaintiff does not even attempt to allege that Vivid Seats owed him a duty.

10  See Compl. ¶¶ 105-111.  Nor could he.  Plaintiff does not allege any personal injury

11  or property damage.  See id. at passim.  Nor does he allege that Vivid Seats is in the

12  business of "supplying information for the guidance of others in their business

13  transactions" or that Vivid Seats took on such a duty here.  Hoover, 975 N.E.2d at

14  648; see also Compl. at passim.  Rather, Plaintiff simply alleges that Vivid Seats is

15  a "secondary ticket marketplace[.]" Compl. ¶ 14.  Plaintiff thus does not and cannot

16  allege that Vivid Seats owed him a duty for purposes of a negligent

17  misrepresentation claim under Illinois law, and his claim should be dismissed.  See,

18  e.g., Hoover, 975 N.E.2d at 648-49.

19      Plaintiff's claim for negligent misrepresentation is separately barred under

20  Illinois law by the economic loss doctrine.  Where (as here) a defendant is "not in

21  the business of supplying information," the doctrine precludes recovery for purely

22  economic loss.  See First Midwest, 843 N.E.2d at 340; see also id. at 335.  Plaintiff,

23  however, only seeks recovery for economic loss, and the economic loss doctrine

24  therefore bars his claim for negligent misrepresentation.  See Orchard Park Plaza v.

25  Chubb Custom Ins., 2018 WL 6728116, at *8 (Ill. App. 1st Dist. 2018) (affirming

26  dismissal of negligent misrepresentation claim under economic loss doctrine where

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

21

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1  defendant was not in business of supplying information).[8]

2  ### 4.   Plaintiff's Intentional Misrepresentation Claim Also Fails

3  In Illinois, the elements for intentional or so-called "fraudulent"

4  misrepresentation are:  (1) a false statement of material fact; (2) the statement is

5  known or believed to be false by the person making it; (3) an intent to induce the

6  plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the

7  statement; and (5) damage to the plaintiff resulting from such reliance.  See Powers

8  v. Corn Prods. Int'l, 557 F. Supp. 2d 921, 926 (N.D. Ill. 2008) (dismissing intentional

9  misrepresentation claim).

10  Plaintiff's allegations of intentional misrepresentation essentially boil down

11  to a claim that he purchased tickets through the online marketplace of Vivid Seats in

12  exchange for a promise that Vivid Seats would refund the ticket price should the

13  event be cancelled and that Vivid Seats failed to honor that promise.  See Compl.

14  ¶¶ 15, 33, 38, 113, 115, 117, 118.  While Plaintiff alleges that Vivid Seats knew or

15  should have known it could not provide a refund (id. ¶ 116), Plaintiff is really just

16  alleging a breach of the Terms of Use to which Plaintiff agreed.  See disc. supra at

17  12-14.

18  But "[a] breach-of-contract claim dressed up in the language of fraud does not

19  state a fraud claim[.]"  C.M. v. Aetna, 2019 WL 5833700, at *3 (N.D. Ill. 2019)

20  (dismissing fraud and statutory consumer protection claims as improperly dressed-

21  up breach of contract claim).  The alleged "deceptive act must involve something

22  more than the promise to do something and a corresponding failure to do it."  Id.;

23  see also Desnick v. Am. Broadcasting, 44 F.3d 1345, 1354 (7th Cir. 1995)

24  ("[A]llowing suits to be based on nothing more than an allegation of a fraudulent

25

26  _____
[8] The economic loss rule would similarly bar Plaintiff's negligent misrepresentation
27  claim under California law.  See, e.g., Foster Poultry Farms v. Alkar-Rapidpak-MP
Equip., 868 F. Supp. 2d 983, 995-96 (E.D. Cal. 2012) (negligent misrepresentation
28  claim under California law barred by the economic loss rule).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

22

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1  promise" would create "a risk of turning every breach of contract suit into a fraud

2  suit, of circumventing the limitation that the doctrine of consideration is supposed

3  however ineptly to place on making all promises legally enforceable, and of

4  thwarting the rule that denies the award of punitive damages for breach of

5  contract."); Nat'l Painting v. PPG, 2015 WL 1593008, at *3 (N.D. Ill. 2015)

6  (promissory fraud claims are "generally not actionable under Illinois law," because

7  "anyone with a breach of contract claim could open the door to tort damages by

8  alleging that the promises broken were never intended to be performed").  Because

9  Plaintiff alleges in essence that Vivid Seats made a promise to provide a refund and

10  failed to do so, his claim for intentional misrepresentation should be dismissed. See

11  C.M., 2019 WL 5833700, at *4 (dismissing fraud claim, because it was not

12  sufficiently distinct from an alleged breach of contract); see also Nat'l Painting, 2015

13  WL 1593008, at *4 (dismissing fraud claim).[9]

14  ## IV.  CONCLUSION

15     For the reasons set forth above, Vivid Seats respectfully requests that the

16  Court compel Plaintiff to abide by the arbitration and dispute resolution procedures

17  set forth in the Terms of Use to which Plaintiff agreed, compel arbitration on a non-

18  class basis under the FAA and dismiss this action under Federal Rules of Civil

19  Procedure 12(b)(1), 12(b)(3) and/or 12(b)(6), or, alternatively, to dismiss this action

20  for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Vivid

21

22

23

24

25

26  [9] Plaintiff's claim for intentional misrepresentation similarly fails under California
   law, as it is barred by the economic loss rule.  See, e.g., Foster Poultry Farms, 868

27  F. Supp. 2d at 991 (economic loss rule bars fraud claims where the damages sought
   are the same economic losses arising from alleged breach of contract).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

23

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS

1    Seats further respectfully requests that the Court grant such other relief as the Court

2    deems just and appropriate.

3      Dated:  January 25, 2021                    Respectfully submitted,

4                                                  LATHAM & WATKINS LLP

5                                                  By: /s/ *Michael A. Hale*
                                                       Michael A. Hale

6
                                                   Michael A. Hale (Bar No. 319056)
7                                                    *michael.hale@lw.com*
                                                   355 South Grand Avenue, Suite 100
8                                                  Los Angeles, California 90071
                                                   Telephone: (213) 485-1234
9                                                  Facsimile:  (213) 891-8763

10                                                 LATHAM & WATKINS LLP
11                                                 Mark S. Mester (Admitted *Pro Hac Vice*)
                                                     *mark.mester@lw.com*
12                                                 Robert C. Collins III (Admitted *Pro Hac Vice*)
                                                     *robert.collins@lw.com*
13                                                 330 North Wabash Avenue, Suite 2800
                                                   Chicago, Illinois  60611
14                                                 Telephone:  (312) 876-7700
                                                   Facsimile:  (312) 993-9767

15

16                                                 *Attorneys for Defendant Vivid Seats LLC*

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

24

DEF. VIVID SEATS LLC'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO COMPEL ARBITRATION
CASE NO. 8:20-cv-02133-JLS-ADS